| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: February 15, 2017 10:46 AM<br>FILING ID: 1D0A27BA15030<br>CASE NUMBER: 2017CV30376 |
| JULIE ANN MEADE, ADMINISTRATOR, UNIFORM CONSUMER CREDIT CODE,<br><br>Plaintiff,<br><br>v.<br><br>MARLETTE FUNDING LLC d/b/a BEST EGG,<br><br>Defendant. | |
| | ▲ **COURT USE ONLY** ▲ |
| CYNTHIA H. COFFMAN, Attorney General<br>NIKOLAI N. FRANT, #38716*<br>Senior Assistant Attorney General<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 6th Floor<br>Denver, Colorado 80203<br>Phone Number: 720-508-6111<br>FAX Number: 720-508-6033<br>Email: nikolai.frant@coag.gov<br>*Counsel of Record | Case No. 17CV30376<br><br>Courtroom 368 |
| **AMENDED COMPLAINT** | |

Plaintiff Julie Ann Meade, Administrator, Uniform Consumer Credit Code ("the Administrator"), by and through the undersigned counsel, for her amended complaint against Marlette Funding LLC d/b/a Best Egg ("Marlette"), alleges as follows:

## I. PARTIES

1. The Administrator is the duly appointed Administrator of the Uniform Consumer Credit Code ("the UCCC"). She is authorized to enforce compliance with the UCCC, *see* C.R.S. §§ 5-6-101, *et seq.*, and may bring a civil action against those who make or collect charges in excess of those permitted by the UCCC. In such action, the Administrator may seek injunctive relief to restrain persons from violating the UCCC, obtain consumer restitution, and collect civil penalties for violations of the UCCC. *See* C.R.S. §§ 5-6-111, 5-6-112, 5-6-113, and 5-6-114.

2. Defendant Marlette does business as "Best Egg" and is a foreign company organized under the laws of Delaware. Marlette identifies its principal place of business as 1523 Concord Pike, Suite 201, Wilmington, Delaware 19803. Marlette is licensed by the Administrator as a Colorado supervised lender, license number 992119.

## II.  GENERAL FACTS

A.   Marlette's Supervised Lender's License

3. Marlette has been licensed by the Administrator as a Colorado supervised lender from May 2014 through the present.

B.   The Best Egg Loans

4. Per the "About" page of its website (**Exhibit A**), Marlette is a self-described "specialty finance company" formed in 2013.

5. In 2014, Marlette launched its first product, which it refers to as "Best Egg personal loans" (hereinafter "Best Egg Loans").

6. The Best Egg Loans are loans that are made or arranged by a business entity that is regularly engaged in the business of making loans.

7. Consumers can apply for and obtain Best Egg Loans via a website that is owned and operated by Marlette. The website has the following internet address: https://www.mybestegg.com/.

8. The Best Egg Loans are made to consumers who are persons, as opposed to business entities.

9. By receiving Best Egg Loans, consumers incur debt, and the debt is incurred primarily for personal, family, or household purposes.

10. The debt that consumers incur as a result of the Best Egg Loans is by written agreement payable in installments and a finance charge is made.

11. The principal loaned to consumers who receive Best Egg Loans does not exceed $75,000.

12. Best Egg Loans have been made to consumers who are residents of Colorado (hereinafter "the Colorado Best Egg Loans").

13. The residents of Colorado who have received the Colorado Best Egg

Loans have received the loans from a creditor who has solicited or advertised the Colorado Best Egg Loans in Colorado.

14. The means of advertising the Colorado Best Egg Loans have included, without limitation, advertisements that were sent to Colorado residents by mail.

15. From approximately September 2014 through the present, Marlette has acted as a "creditor," as defined in C.R.S. § 5-1-301(17), with respect to the Colorado Best Egg Loans.

16. From approximately September 2014 through the present, Marlette has made charges to Colorado consumers on the Colorado Best Egg Loans that are owned by non-bank entities ("Non-Bank Colorado Best Egg Loans").

17. From approximately September 2014 through the present, Marlette has undertaken direct collection of payments from or enforcement of rights against consumers arising from Non-Bank Colorado Best Egg Loans.

18. Marlette has made or collected charges from consumers on Non-Bank Colorado Best Egg Loans which exceed the maximum finance charges that are permitted for supervised loans under Colorado law.

19. The written agreements evidencing Non-Bank Colorado Best Egg Loans state, "[i]f your payment is not received by us within three days of the due date, we may charge a late fee in the amount of $15."

20. Marlette has made or collected delinquency charges on Non-Bank Colorado Best Egg Loans when consumers have not made a payment on Non-Bank Colorado Best Egg Loans by the scheduled due date.

21. Marlette has made or collected delinquency charges on Non-Bank Colorado Best Egg Loans without waiting at least ten days after the scheduled due date before making or collecting the delinquency charges.

22. The written agreements evidencing Non-Bank Colorado Best Egg Loans state, "to the extent that state law applies [to this Agreement], the laws of the state of New Jersey" apply.

23. The written agreements evidencing Non-Bank Colorado Best Egg Loans state, "Extension Fees. You agree to pay a fee of $25 or such other amount as provided by law for the processing of your request for an extension of this Agreement."

### C. Marlette's Association with Cross River Bank

24. The Best Egg Loans are made to consumers pursuant to a lending program established by written agreements between Marlette and Cross River Bank, a New Jersey state-chartered bank (the "Best Egg lending program"). The agreements were originally dated February 28, 2014 and have subsequently been amended.

25. Cross River Bank is identified in the agreements as the entity that makes the Best Egg Loans to consumers.

26. However, within two business days of when the loans are made, Cross River Bank sells approximately 90% of the Best Egg Loans to Marlette or Marlette's non-bank designees.

27. With respect to such Best Egg Loans that Cross River Bank sells to Marlette or Marlette's non-bank designees, a primary purpose of Cross River Bank's involvement is to allow Marlette and other non-banks to circumvent state laws, including Colorado laws, that limit the interest rates and other finance charges that may be assessed on the Best Egg Loans.

28. Specifically, unlike Marlette, certain banks may, pursuant to federal law, lawfully lend in Colorado and other states at rates that exceed the interest and other finance charge limits imposed by state law. This right is sometimes referred to as federal interest rate exportation.

29. Marlette and other non-banks cannot, however, enforce a bank's federal interest rate exportation rights when they purchase loans from banks because banks cannot validly assign such rights to non-banks. *E.g. Madden v. Midland Funding, LLC*, 786 F.3d 246, 250 (2d Cir. 2015) (distinguishing contrary precedent, and holding that non-bank purchaser of national bank's loan could not enforce bank's right to federal interest rate exportation).

30. Further, with respect to the Best Egg Loans that Cross River Bank sells to Marlette or Marlette's non-bank designees, Cross River Bank is not the true lender of the loans and, because the loans therefore are not made by a bank, federal interest rate exportation does not apply for this additional reason. *E.g. CashCall, Inc. v. Morrisey*, 2014 W. Va. LEXIS 587 (W. Va. May 30, 2014) (memorandum decision) (national bank that sold loans to non-bank was not the true lender of the loans because the non-bank purchaser bore the predominant economic interest in the loans and non-bank purchaser therefore could not enforce bank's right to federal interest rate exportation).

31. Cross River Bank is not the true lender of the Best Egg Loans that it sells to Marlette or Marlette's non-bank designees because Cross River Bank does not bear the predominant economic interest in the loans.

32. Among other reasons, Cross River Bank does not bear the predominant economic interest in such loans because:

a. Marlette paid all of Cross River Bank's costs associated with the initiation of the Best Egg lending program.

b. Marlette pays Cross River Bank's legal fees related to the Best Egg lending program.

c. Marlette pays the costs associated with marketing the Best Egg Loans to consumers.

d. Marlette pays all costs of determining which loan applicants will receive Best Egg Loans, including employing staff to evaluate loan applications and including the cost of purchasing credit reports.

e. Marlette decides which loan applicants will receive Best Egg Loans, applying lending criteria agreed to by Marlette and Cross River Bank.

f. Marlette has established and maintains, at its own expense, an accounting and loan tracking system to track Best Egg Loan applications, Best Egg Loans, and Best Egg Loan repayment information.

g. Cross River Bank bears no risk that it will lose its principal in the event that consumers default on the Best Egg Loans that it sells to Marlette or Marlette's non-bank designees: (1) when Cross River Bank makes Best Egg Loans that are to be sold, Cross River Bank knows in advance that Marlette has sufficient funds to purchase the loans because Marlette is required to maintain a bank account at Cross River Bank (or another approved bank) with such funds; (2) Marlette or its designee purchase the Best Egg Loans from Cross River Bank within two business days of when the loans are made and the purchase price includes the amount that Cross River Bank advanced to the consumer, in addition to other amounts; (3) by contractual agreement, Cross River Bank has no liability to Marlette for the repayment of the Best Egg Loans, which are sold "without recourse;" and (4) Marlette is obligated to indemnify Cross River Bank against any claim that any aspect of the Best Egg lending program violates the law.

    h.    Marlette raises capital to fund the origination of Best Egg Loans. On July 17, 2015, Marlette announced that it raised $75 million in equity funding to accelerate growth, further its partnership agenda, and begin putting Best Egg Loans on its own balance sheet, as opposed to selling them to third-party investors. As of July 17, 2015, Marlette's 2015 Best Egg Loan originations had already far exceeded its 2014 full-year total of $383 million. In August 2016, Marlette raised $205 million through the sale of securities to be used by Marlette to fund the Best Egg Loans. Marlette is actively closing over $2 billion through the sale of securities to be used by Marlette to fund the origination of Best Egg Loans.

    i.    When a consumer pays off a Best Egg Loan in accord with the loan agreement, both Cross River Bank and Marlette (or its designee) share in the profit earned on the loan, but Cross River Bank's share is only approximately one percent (1%) of the total profit.

    j.    Cross River Bank cannot use, sell, or transfer information regarding consumers who have applied for or obtained Best Egg Loans unless it obtains Marlette's consent.

33. Accordingly, Marlette and its affiliated non-bank entities are the true lender of the Best Egg Loans that Marlette purchases, or that are purchased by its designees.

D.    <u>The Administrator's Compliance Examination</u>

34. In 2015, the Administrator conducted a compliance examination of Marlette, pursuant to the statutory authority set forth in C.R.S. § 5-2-305.

35. By a report of examination dated December 4, 2015, the Administrator informed Marlette, amongst other things, that Marlette was charging finance charges, late charges, and extension fees that violated Colorado law. The report of examination further informed Marlette that the loan agreements for the Colorado Best Egg Loans contracted for the application of New Jersey law, in violation of Colorado law.

36. In the report of examination, the Administrator directed Marlette to make refunds to consumers of certain excess charges and fees and to apply Colorado law instead of New Jersey law with respect to loan agreements with Colorado consumers.

37. Marlette responded to the report of examination by stating that its

association with Cross River Bank meant that Colorado law provisions regarding finance charge limits and choice of law restrictions were preempted.

38. After reviewing additional information from Marlette and considering its position, the Administrator informed Marlette that she rejected the position and renewed her request that Marlette take the corrective actions identified in the report of examination.

39. Marlette has refused to take the corrective actions directed by the Administrator in her report of examination with respect to excess finance charges, late charges, extension fees, and provisions in consumer agreements contracting for the application of New Jersey law.

### III. FIRST CLAIM FOR RELIEF
### EXCESS CHARGES

40. The Administrator repeats and realleges the paragraphs above, as if alleged herein.

41. Marlette has charged, assessed, collected, or received finance charges and delinquency charges in connection with Non-Bank Colorado Best Egg Loans that exceed the finance charges authorized and allowable under C.R.S. § 5-2-201 and the delinquency charges authorized and allowable under C.R.S. § 5-2-203.

### IV. SECOND CLAIM FOR RELIEF
### UNLAWFUL CHOICE OF LAW PROVISION

42. The Administrator repeats and realleges the paragraphs above, as if alleged herein.

43. The written agreements evidencing Non-Bank Colorado Best Egg Loans include terms that purport to provide that the law of a state other than Colorado applies, in violation of C.R.S. § 5-1-201(8).

### V. THIRD CLAIM FOR RELIEF
### UNLAWFUL EXTENSION FEE PROVISION

44. The Administrator repeats and realleges the paragraphs above, as if alleged herein.

45. The written agreements evidencing Non-Bank Colorado Best Egg Loans include terms that purport to permit the creditor to charge a fee of $25 for the processing of a consumer's request for the extension of the agreement, in violation of

C.R.S. §§ 5-2-201 and 5-2-204.

WHEREFORE, the Administrator requests judgment, as follows:

(i) preliminarily and permanently enjoining Marlette, and its officers, directors, agents, servants, employees, attorneys, heirs, successors, and assigns, from committing any of the practices, acts, conduct, transactions, or violations described above, or otherwise violating the UCCC, together with all such other relief as may be required to completely compensate or restore to their original position all consumers injured or prevent unjust enrichment of any person, by reason or through the use or employment of such practices, acts, conduct, or violations, or as may otherwise be appropriate, including, without limitation, requiring Marlette to disgorge to the Administrator or make restitution to consumers of all amounts charged, assessed, collected, or received in violation of the UCCC;

(ii) for every consumer credit transaction as may be determined at trial or otherwise in which a consumer was charged an excess charge in violation of the UCCC, ordering Marlette to refund to each such consumer the excess charge;

(iii) for every consumer credit transaction as may be determined at trial or otherwise in which a consumer was charged an excess charge, ordering Marlette to pay to each such consumer a civil penalty determined by the Court not in excess of the greater of either the amount of the finance charge or ten times the amount of the excess charge;

(iv) ordering Marlette to pay to the Administrator a civil penalty determined by the Court within the limits set forth by statute;

(v) awarding pre- and post-judgment interest to the Administrator, as may be allowed by contract, law, or otherwise; and

(vi) awarding the Administrator the costs and disbursements of this action, including attorney's fees, together with all such further relief as the Court deems just.

DATED: February 15, 2017

CYNTHIA H. COFFMAN
Attorney General

/s/ *Nikolai N. Frant*
NIKOLAI N. FRANT, 38716*
Senior Assistant Attorney General
Consumer Credit Unit
Consumer Protection Section
*Attorneys for Plaintiff*
*Counsel of Record

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing AMENDED COMPLAINT was duly served by E-Filing upon the following this 15th day of February, 2017:

Geoffrey N. Blue, Esq.
Steven A. Klenda, Esq.
Scott E. Gessler Esq.
Klenda Gessler & Blue, LLC
1624 Market St., Suite 202
Denver, Colorado 80202
*Attorneys for Defendant*

/s/ *Michele A. Kendall*
Michele A. Kendall, Legal Assistant






DATE FILED: February 15, 2017 10:46 AM
FILING ID: 1D0A27BA15030
CASE NUMBER: 2017CV30376

EXHIBIT A