## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00575-PAB

COLORADO *ex rel.* Julie Ann MEADE, Administrator,
Uniform Consumer Credit Code,

     Plaintiff,

v.

MARLETTE FUNDING LLC
d/b/a BEST EGG,

     Defendant.

---

## PLAINTIFF'S MOTION TO REMAND
## FOR LACK OF SUBJECT MATTER JURISDICTION

---

Plaintiff Julie Ann Meade, Administrator of the Uniform Consumer Credit

Code, through counsel, and pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1447(c),

moves this Court to remand this case to the Denver District Court:

### CERTIFICATE OF CONFERRAL

Undersigned has conferred by telephone with counsel for Marlette Funding

LLC regarding the relief requested in this motion.  Marlette opposes the motion.

### INTRODUCTION

The Administrator is a Colorado state official responsible for licensing and

regulating non-bank consumer lenders pursuant to Colorado's Uniform Consumer

Credit Code ("UCCC"), C.R.S. §§ 5-1-101, *et seq*.  Defendant Marlette Funding LLC

is one of the Administrator's licensees.

The Administrator sued Marlette in the Denver District Court in January

2017.  In three causes of action, the Administrator asserts that Marlette has

violated Colorado law (the UCCC) by collecting usurious interest rate charges from

Colorado consumers.

Notwithstanding that the Administrator alleges only state causes of action,

Marlette has removed the Administrator's claims.  Marlette contends that the

Administrator's claims arise under federal law, thus invoking the Court's

jurisdiction pursuant to 28 U.S.C. § 1331.  (Notice of Removal ("NOR"), Dkt#1, at ¶

3.)  Marlette asserts that although the Administrator states no federal cause of

action, her claims nonetheless arise under federal law because the subject loans

were originated by a state bank (Cross River Bank), and Colorado law is therefore

completely preempted by federal banking law.  (NOR at ¶¶ 3-4.)

Marlette's contention fails.  Per the well-pleaded complaint rule, a suit arises

under federal law for removal purposes only when the plaintiff asserts a federal

claim.  A federal preemption defense does not give rise to removal jurisdiction.

It is true that, pursuant to the complete preemption doctrine, state usury

claims against national banks may be removed notwithstanding the absence of a

federal cause of action.  But the Administrator does not assert claims against a

national bank.  She asserts her claims against Marlette, a non-bank, and limits her

complaint to loans that are owned by Marlette or by its non-bank designees. Complete preemption, therefore, does not apply.

This Court already resolved the issue presented in an oft-cited 2002 decision, in which it held that complete preemption under the National Bank Act ("NBA") is not available to non-bank assignees of bank loans. *Colorado ex rel. Salazar v. ACE Cash Express, Inc.*, 188 F. Supp. 2d 1282, 1284-1285 (D. Colo. 2002).

Complete preemption is particularly inapplicable where, as here, the Administrator alleges that Marlette is the true lender of the loans, instead of Cross River Bank.  She asserts that Marlette has engaged in a scheme to circumvent Colorado law by disguising its own loans as bank loans.  The federal courts that have considered such "true lender" claims have remanded them for resolution in state court.

Moreover, complete preemption does not permit removal because it applies only to usury claims against national banks.  The loans in this case purport to have been made by a state bank, and usury claims against state banks are not completely preempted.  Finally, even if complete preemption existed, this case would be properly remanded pursuant to *Younger* abstention.

## THE ADMINISTRATOR'S STATE LAW CLAIMS

Pursuant to her authority as a state official, the Administrator filed suit against Marlette.  (Amended Complaint ("AC"), Dkt#5, at ¶ 1.)  The Administrator's suit addresses loans (the "Best Egg loans") that are made pursuant to agreements

between Marlette and Cross River Bank.  (*Id.* at ¶ 24.)  Although the Best Egg loans

purport to be originated by Cross River Bank (AC at ¶ 25), the Administrator does

not name Cross River Bank as a defendant in the case.  Nor does the Administrator

allege any claims regarding loans that are owned by Cross River Bank.

Instead, the Administrator limits her claims to Best Egg loans that are

owned by Marlette (or its designees) – sometimes referred to in the Amended

Complaint as "Non-Bank Colorado Best Egg Loans."  (*Id.* at ¶¶ 16, 26-27, 40-45.)

With respect to such loans, which amount to 90% of all Best Egg loans, the

Administrator alleges that Marlette – and not Cross River Bank – is the true lender

of the loans.  (*Id.* at ¶¶ 27-30.)  The Administrator alleges that Marlette bears the

predominant economic interest in the loans and identifies facts which support that

allegation.[1]  (*Id.* at ¶¶ 31-32.)

In three claims for relief, the Administrator relies exclusively on Colorado

law.  (*Id.* at ¶¶ 40-45.)  She seeks relief against only Marlette.  (*Id.* at page 8.)

## ARGUMENT

### I.   Marlette Bears the Burden of Proof and Uncertainties Regarding Removal Are Resolved in Favor of Remand

When a defendant removes a case to federal court, there is a presumption

against removal jurisdiction.  *Anderson v. Lehman Bros. Bank, FSB*, 528 Fed. Appx.

793, 795 (10th Cir. 2013).  The party seeking removal has the burden of proof to

---

[1] Marlette pays the cost of marketing and underwriting the loans, purchases the
loans within two business days of origination, bears all risk of default, and (with
non-bank investors) enjoys 99% of the profits on performing loans. (AC ¶ 32(a) – (i).)

establish that the federal court has jurisdiction.  *Id.*  Removal statutes are construed narrowly, and uncertainties are resolved in favor of remand.  *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

## II.   Complete Preemption under the National Bank Act Does not Apply to Claims Against Non-Banks

Marlette asserts that this Court has subject matter jurisdiction over the Administrator's claims pursuant to 28 U.S.C. § 1331.  (NOR at ¶ 3.)  Accordingly, Marlette must establish that the Administrator's lawsuit is an action "arising under" federal law in order to establish jurisdiction.  28 U.S.C. § 1331.

Whether a lawsuit arises under federal law is governed by the well-pleaded complaint rule, which states that a suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based on federal law."  *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (citations omitted).  Thus, unless an exception applies, "by omitting federal claims from a complaint, a plaintiff can generally guarantee an action will be heard in state court."  *Id.* (citations omitted); *see also Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (U.S. 2003) ("As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim").

As set forth above, the Administrator's Amended Complaint alleges no federal claim.  Instead, in three claims for relief, the Administrator alleges that Marlette has violated Colorado's consumer lending laws.  (AC at ¶¶ 40-45.)

5

In apparent recognition of these facts, Marlette does seek removal on the assertion that the Administrator has stated a federal cause of action.  Instead, Marlette argues that removal is proper based upon an exception to the well-pleaded complaint rule, referred to as "complete preemption."  (NOR at ¶ 11.)

Complete preemption is a "rare doctrine" representing an "extraordinary preemptive power."  *Devon Energy Prod. Co., L.P.*, 693 F.3d at 1204-1205 (internal citations omitted).  It is "so rare" that the Supreme Court has recognized it in only three specific areas.  *Id.*

One such area, the area upon which Marlette relies, applies to "actions for usury against national banks under the [NBA]."  *Id.* (internal citations omitted). Usury claims against national banks are completely preempted because "Congress intended § 86 [of the NBA] to provide the exclusive cause of action for usury claims against national banks...."  *Ben. Nat'l Bank*, 539 U.S. at 9.  This rare exception to the well-pleaded complaint rule arises because of the U.S. Supreme Court's "longstanding and consistent construction of the [NBA] as providing an exclusive federal cause of action for usury against national banks" and because of the "special nature of federally chartered banks."  *Id.* at 10.

In contrast, there is no such longstanding case law establishing that non-bank assignees of bank loans may be sued only in federal court.  To the contrary, courts have regularly held that complete preemption specifically does not apply to state law usury claims against such non-bank loan assignees.

This issue was directly addressed by this Court (Judge Wiley Y. Daniel) in *Salazar*, 188 F. Supp. 2d 1282.  The plaintiff in that case was, as here the Administrator.  *Id*. at 1282.  The defendant, a non-bank, collected charges on loans that were originated by Goleta National Bank.  *Id*. at 1283-84.  The Administrator sued the defendant in state court, alleging excessive interest in violation of Colorado law, and the defendant removed.  *Id*. at 1283.

In opposition to the Administrator's remand motion, the defendant argued that because a national bank originated the loans, the Administrator's state law claims against the non-bank defendant were completely preempted.  *Id*. at 1284.  According to the defendant, the Administrator's lawsuit "constitutes an attempt to prevent the Bank from charging the interest permitted [by federal law]."  *Id*.

Judge Daniel rejected this argument.  He noted that the NBA regulates only national banks.  *Id*. (citation omitted).  Although a bank originated the loans, Judge Daniel focused on the Administrator's causes of actions and remanded because "in this case [t]he Complaint <u>strictly</u> is about a non-bank's violations of <u>state</u> law.  It alleges no claims against a <u>national bank</u> under the <u>[NBA]</u>."  *Id*. at 1285 (emphasis supplied).  The analysis in *Salazar* has been embraced by a sister district court in the Tenth Circuit, as well as by courts in other circuits.[2]  Also, the Comptroller of

---

[2] *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 296 (3d Cir. 2005) (citing *Salazar* and stating that complete preemption does not apply to "non-bank purchasers of second mortgage loans…"; *Community State Bank v. Knox*, 850 F.Supp.2d 586, 598-99 (M.D. N.C. 2012) (citing *Salazar*, and holding that prior remand "rests on a sound legal basis . . . that state law claims brought only against non-bank entities

the Currency ("OCC"), the primary regulator of the national banks, filed an *amicus*

brief in *Salazar* supporting remand because complete preemption does not apply to

non-banks.  (OCC *Amicus* Brief in Support of Remand, *Salazar v. Ace Cash*, CV 01-

1576 (D. Colo. Sept. 26, 2001 at 1-2, **Ex. 3**.)

The holding in *Salazar* and the other cited cases is supported by a 2010

amendment to the NBA.  Specifically, with the Dodd-Frank Wall Street Reform and

Consumer Protection Act ("Dodd-Frank Act"), Pub. L. No. 111-203, Congress

amended the NBA to "clarify" that preemption specifically does not apply to

national bank subsidiaries, affiliates, or agents.  The NBA now provides:

> (h)  Clarification of law applicable to nondepository
> institution subsidiaries and affiliates of national banks.
>   (1)  Definitions.  For purposes of this subsection, the
> terms "depository institution", "subsidiary", and "affiliate"

---

are not subject to complete preemption, even if the state law claims would have
been subject to complete preemption if they had been brought against a national or
state-chartered bank"), *aff'd in unpublished opinion*, 523 Fed. Appx. 925 (4th Cir.
2013) (**Ex.1**); *West Virginia v. CashCall, Inc.*, 605 F. Supp. 2d 781, 786 (S.D. W. Va.
2009) (remanding case against non-bank assignee of purported bank loans because
the "totality of the Complaint shows that the State's  suit is directed against a
single, specific entity violating a host of state laws including the usury law--that
entity is CashCall, not the Bank"); *Flowers v. EZPawn Okla., Inc.*, 307 F. Supp. 2d
1191, 1204 (N.D. Okla. 2003), *magistrate opinion affirmed and adopted by Flowers
v. EZPawn Okla., Inc.*, 307 F. Supp. 2d 1191, 1196 (N.D. Okla. 2004) (remand
required because "petition alleges state law claims against non-bank
defendants…"); *Carson v. H & R Block, Inc.*, 250 F. Supp. 2d 669, 673-75 (S.D. Miss.
2003) (same); *Spitzer v. County Bank of Rehoboth Beach,* 1:03-CV-1320 (N.D. N.Y.
2004) (unpublished) (**Ex. 2**) (finding no complete preemption by the FDIA where
state law usury claims were asserted only against separate entities, not against the
state-chartered bank); *Brown v. Ace Cash Express, Inc.*, 2001 U.S. Dist. LEXIS
25847, *5 (D. Md. Nov. 14, 2001) (same); *Long v. Ace Cash Express, Inc.*, 2001 U.S.
Dist. LEXIS 24617, *2-4 (M.D. Fla. June 18, 2001) (same).

> have the same meanings as in section 3 of the Federal
> Deposit Insurance Act [12 USCS § 1813].
>
> (2) Rule of construction. **No provision of this title[3] or
> section 24 of the Federal Reserve Act (12 U.S.C. 371)
> shall be construed as preempting, annulling, or
> affecting the applicability of State law to any
> subsidiary, affiliate, or agent of a national bank**
> (other than a subsidiary, affiliate, or agent that is
> chartered as a national bank).

12 U.S.C. § 25b(h) (emphasis added). *See Gordon v. Kohl's Department Stores et al.*,

2016 U.S. Dist. LEXIS 40008, *51-52 (E.D. Pa. 2016) (claims against store that

serviced loans made by a national bank were not preempted, citing 12 U.S.C. §

25b(h)). Given that claims against bank affiliates, agents, and subsidiaries are not

preempted, they certainly are not completely preempted for the purpose of removal.

In accord with the foregoing precedent, there is no basis for removing the

Administrator's claims in this case. The claims are directed solely at Marlette and

she excludes any loans retained by Cross River Bank. (AC at ¶¶ 16-23, 27-32, 40-

45). *See CashCall*, 605 F. Supp. 2d at 788 (remand appropriate where West

Virginia Attorney General's claims against non-bank loan purchaser sought relief

only from non-bank entity).

Further, the Administrator alleges that Cross River Bank is not the true

lender of the Best Egg loans that Marlette purchases. (AC at ¶¶ 30-32.) Rather,

Marlette and its non-bank affiliates are the true lender because Marlette performs

all work associated with marketing and underwriting the loans, bears all risk of

---

[3] 12 U.S.C. § 25b(h) is located in Title 12 of the United States Code, which is the
Title that contains the National Bank Act.

default associated with the loans by agreeing to purchase them all within two business days of origination, and enjoys the overwhelmingly predominant economic interest in the loans (together with its non-bank affiliates) because it enjoys approximately 99% of the profits from the average loan.  (*Id.* at ¶ 32.)

These facts, alleged against Marlette, simply do not fall within the narrow category of usury claims that must be decided in the federal courts pursuant to complete preemption.  To the contrary, such "true lender" claims are properly decided in the state courts.  *E.g. CashCall*, 605 F. Supp. 2d at 787 (remanding state claims because, amongst other reasons, "the State alleges that [the non-bank purchaser] is the de facto lender and there is a factual question as to the identity of the true lender"); *Flowers*, 307 F. Supp. 2d at 1205 (same); *Brown*, 2001 U.S. Dist. LEXIS 25847, *5 (remanding case where "involvement of a national bank in the underlying transaction is alleged merely to be nominal and pretextual").

Accordingly, Marlette has not met its burden of establishing a federal question that can permit removal under the well-pleaded complaint rule.

## III. *Salazar v. ACE Cash Express* is Consistent with the U.S. Supreme Court Holding in *Beneficial Nat'l Bank v. Anderson*

In its Notice of Removal, Marlette acknowledges that the *Salazar* holding is directly on point.  (NOR at ¶ 19.)  It argues, however, that *Salazar* was undermined by the U.S. Supreme Court's holding in *Beneficial Nat'l Bank*.  (NOR at ¶ 19.)

Marlette's argument is incorrect.  *Beneficial Nat'l Bank* does not undermine *Salazar* because the *Salazar* court assumed that complete preemption applied to

usury claims against national banks, which is the decision that the Supreme Court reached in *Beneficial Nat'l Bank*. *Beneficial Nat'l Bank*, 539 U.S. at 11.

The *Salazar* court focused instead on an issue not addressed in *Beneficial Nat'l Bank*: does the complete preemption available to national banks extend to their non-bank assignees? *Salazar*, 188 F. Supp. 2d at 1285. The *Salazar* court's conclusion, that state claims against non-banks are <u>not</u> completely preempted, thus is entirely consistent with the holding in *Beneficial Nat'l Bank*. *See In re Cmty. Bank*, 418 F.3d at 294 (recognizing that complete preemption applies to claims against national banks per *Beneficial Nat'l Bank* but holding that complete preemption does not apply to "non-bank purchasers of second mortgage loans"); *Flowers*, 307 F. Supp. 2d at 1205 (citing *Salazar* and stating that non-bank's "reliance on *Beneficial* is misplaced").

## IV. *Krispin v. May Department Stores Co.* and *Discover Bank v. Vaden* Are Distinguishable

Although not cited in Marlette's Notice of Removal, non-bank loan assignees sometimes cite to two reported cases to argue that they are entitled to complete preemption. However, the cases are clearly distinguishable, and one case, *Krispin*, has been invalidated by Dodd-Frank Act's 2010 amendments to the NBA.

The first case, *Krispin v. May Department Stores Co.*, 218 F.3d 919 (8th Cir. 2000), was explicitly distinguished by *Salazar*. *See Salazar*, 188 F. Supp. 2d at 1284. The holding in *Krispin*, that claims against a non-bank were completely preempted, turned on the fact that the bank was a wholly-owned subsidiary of the

non-bank defendant.  *Salazar*, 188 F. Supp. 3d at 1284.  In contrast, the Administrator's claims in *Salazar* were against a separate entity.  *Id*.  Other courts have embraced this distinction.[4]

Further, as set forth above, Congress amended the NBA in 2010 to "clarify" that the NBA does not preempt state law claims against national bank subsidiaries, agents, and affiliates.  12 U.S.C. § 25b(h).  An "affiliate" is defined as "any company that controls, is controlled by, or is under common control with another company...." 12 U.S.C. § 1813(w)(6), *referring to* 12 U.S.C. § 1841(k).  Thus, if decided today, the *Krispin* court would have to hold that the claims against the non-bank (which controlled the bank through ownership) are not preempted.

The second case sometimes cited by non-banks in support of removal is *Discover Bank v. Vaden*, 489 F.3d 594, 597 (4th Cir. 2007), *rev'd on other grounds*, *Vaden v. Discover Bank*, 556 U.S. 49, 50 (U.S. 2009).  In *Vaden*, the Fourth Circuit held that the plaintiff's claims against a non-bank servicer were completely preempted because the state claims were "directed" at the lending bank.  *Id*. However, the bank both originated and continued to own the loans, and the servicer thus was merely servicing the loans on the bank's behalf.  *Id*.

---

[4] *E.g., Madden v. Midland Funding, LLC*, 786 F.3d 246, 252-253 (2d Cir. 2015) (*Krispin* "does not support finding preemption here," where bank did not retain any ownership interest in subject loans); *In re Cmty. Bank*, 418 F.3d at 297 (removal improper where defendants were separate entities from bank, distinguishing *Krispin*); *Flowers*, 307 F. Supp. 2d at 1196 (same); *Pennsylvania v. Think Fin., Inc.*, 2016 U.S. Dist. LEXIS 4649, *40 (E.D. Pa. Jan. 14, 2016) (same); *CashCall*, 605 F. Supp. 2d at 787 (same).

Also, the Fourth Circuit in *Vaden* stated that banks will "not always be the real party in interest" and cited with approval to *Goleta National Bank*, 211 F. Supp. 2d at 718-19, in which the court declined to find complete preemption where the plaintiff alleged that a non-bank payday lender had "leased" an association with a national bank, and that the national bank thus was not the real lender. *Vaden*, 489 F.3d at 603 n.9, *citing Lingerfelt* and *Flowers*, 308 F. Supp. 2d at 1196.

In a more recent case, the Fourth Circuit further discussed the limited application of *Vaden*. In *Cmty. State Bank v. Knox*, 523 Fed. Appx. 925, 929 (4th Cir. 2013) (unpublished) (**Ex. 1**), the court held that complete preemption did not apply, notwithstanding *Vaden*, where the plaintiff targeted the practices of a loan servicer, and alleged that the servicer was the true lender of the bank loans.

## V. Marlette's Preemption Defense Is Distinct from Complete Preemption and Thus Does Not Give Rise to Removal Jurisdiction

Marlette seeks to justify its removal of this case by arguing that the Administrator's claims are preempted by federal banking laws. It argues that under the "valid when made" doctrine, non-bank loan assignees may enforce the interest rate exportation rights that are enjoyed by banks. (NOR at ¶¶ 4, 18-30.)

Putting aside the Administrator's strong grounds for challenging Marlette's preemption argument,[5] the argument is irrelevant in the removal context. It

---

[5] The Administrator challenges Marlette's preemption argument on two grounds. First, Defendant is the true lender of the purported bank loans that it purchases because it bears the predominant economic interest in the loans. As a result, the bank preemption defense is not available to Defendants. Second, Defendants could

ignores the important distinction between complete preemption and the mere assertion of a preemption defense.

More specifically, neither the availability of a preemption defense, nor a plaintiff's anticipation of that defense, can give rise to a federal question that permits removal. *See Beneficial Nat'l Bank*, 539 U.S. at 6 ("a defense that relies on … the pre-emptive effect of a federal statute … will not provide a basis for removal") (citations omitted); *Devon Energy Prod. Co., L.P.*, 693 F.3d at 1204 (same).

Accordingly, Marlette's lengthy discussion of the preemption defense in its Notice of Removal is irrelevant to the proper inquiry for removal purposes. The inquiry is not whether Marlette will assert a defense based upon federal preemption. Instead, it is whether by enacting the NBA, Congress intended to permit the removal of state usury claims against a non-bank assignee of state bank loans. The authority that Marlette relies upon to support its preemption argument specifically does not address whether the claims at issue are removable.[6]

---

not receive the bank's preemption rights by assignment in any event, even if the bank were the true lender, because banks cannot assign their preemption rights.
[6] Marlette cites to *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359 (D. Utah 2014). (NOR at ¶¶ 25-30.) *Sawyer* did not address removal. To the contrary, the *Sawyer* court specifically distinguished contrary case law on the grounds that dealt with "the issue of complete preemption for removal jurisdiction" – an issue not presented in *Sawyer*. *Sawyer*, 23 F. Supp. 3d at 1369 ("*Flowers* inapplicable to the facts here … dealing as it does with the issue of complete preemption for removal jurisdiction"). Marlette also cites to an amicus brief that the United States (the Solicitor General and the OCC) filed when the U.S. Supreme Court was considering *certiorari* review of *Madden v. Midland Funding, LLC*. As with *Sawyer*, *Madden* (and the amicus brief) did not address removal. *Madden*, 786 F.3d at 247. The plaintiffs in Madden alleged a federal claim (violations of the Fair Debt Collection

14

It is true, as Marlette asserts, that the Administrator has anticipated Marlette's preemption argument in her complaint.  (NOR at ¶ 19.)  Under the well-pleaded complaint rule, however, that defense does not create grounds for removal.

## VI.    Complete Preemption under the National Bank Act Does Not Apply to Loans Made by State-Chartered Banks

Marlette cites to the U.S. Supreme Court's holding in *Beneficial Nat'l Bank* to support its argument that the Administrator's claims are completely preempted.  (NOR at ¶ 3.)  *Beneficial Nat'l Bank* involved state usury claims against a national bank, and the Court's holding thus evaluated complete preemption in the context of the NBA.  *Beneficial Nat'l Bank*, 539 U.S. at 9.

However, Marlette cannot rely upon the NBA for removal because the subject Best Egg loans purport to originate from a state bank.  (AC at ¶¶ 24-25.)  The interest rate exportation rights enjoyed by state banks derive from a separate statute.  Differences between the respective statutes, combined with fundamental differences between national and state banks, illustrate that Congress did not intend to completely preempt state usury claims involving state bank loans, even when a state bank is a named defendant.

National banks may export the interest rate of their home state pursuant to a provision of the NBA, 12 U.S.C. § 85.  Section 85 originates from the original

---

Practices Act).  *Id*. at 247.  Accordingly, complete preemption for removal purposes was not at issue in the case.  Indeed, when the OCC addressed complete preemption in its *amicus* brief in *Salazar*, it asserted that complete preemption did not apply to non-banks. (OCC *Amicus* Brief at 2, **Ex. 3**.)

provisions of the NBA, passed in 1864, which established national banks as

"National favorites," and as a part of comprehensive legislation that created the

federal banking system. *Tiffany v. Nat'l Bank of Mo.*, 85 U.S. 409, 412 (U.S. 1874).

As for FDIC-insured state banks, they may export the interest rate of their

home state under a provision of the Federal Deposit Insurance Act ("FDIA"), 12

U.S.C. § 1831d, which was enacted in 1980 when Congress responded to a

nationwide "credit crunch" by enacting the Depository Institutions Deregulation

and Monetary Control Act ("DIDA"). *Greenwood Trust Co. v. Massachusetts*, 971

F.2d 818, 826 (1st Cir. 1992).

In *Thomas v. US Bank Nat'l Ass'n*, 575 F.3d 794 (8th Cir. 2009), the Eighth

Circuit identified key textual differences between 12 U.S.C. § 85 and 12 U.S.C. §

1831d, and concluded that Congress did not intend to completely preempt state

usury claims against state banks. *Thomas*, 575 F.3d at 799-800.

In particular, unlike 12 U.S.C. § 85, 12 U.S.C. § 1831d limits its scope such

that state claims are only preempted in some circumstances.  It does so by stating

that preemption applies only "if the applicable rate prescribed in this subsection

exceeds the rate such State bank or insured branch of a foreign bank would be

permitted to charge in the absence of this subsection...."  12 U.S.C. § 1831d(a);

*Thomas*, 575 F.3d at 798.

The limited scope of 12 U.S.C. § 1831d's preemptive effect is critical for the

purpose of the complete preemption analysis.  Complete preemption only arises

when Congress intended to provide the "exclusive cause of action" for a particular claim. *Beneficial Nat'l Bank*, 539 U.S. at 10. Congress cannot have intended for 12 U.S.C. § 1831d to provide the exclusive cause of action for usury claims against state banks because it applies only to a limited group of claims. *Thomas*, 575 F.3d at 799. Courts in other circuits have reached this same conclusion.[7]

Further, in contrast to national banks, state-chartered banks have a long history of being regulated primarily by state law. *Griner*, 818 F. Supp. 2d at 1348 (citing cases). This history is significant because "[t]he courts 'have long presumed that Congress does not cavalierly pre-empt state law, particularly in those areas in which Congress has legislated in a field which the States have traditionally occupied." *Id. quoting Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

For this additional reason, state usury claims against state banks are not completely preempted. *Griner*, 818 F. Supp. 2d at 1349-50; s*ee also Cmty. State Bank v. Strong*, 2006 U.S. Dist. LEXIS 100611, 22-24 (N.D. Ga. 2006) (*Beneficial* based on national bank status as "unique national concern," remanding claims against a state bank because "the FDIA itself expressly contemplates that states will retain substantial regulatory authority over state banks…").

---

[7] *See Valle v. Popular Cmty. Bank*, 2013 U.S. Dist. LEXIS 111101, * 7-9 (S.D.N.Y. 2013) (remanding state usury claims against state-chartered bank because, citing *Thomas*, DIDA does not give rise to complete preemption); *Griner v. Synovus Bank*, 818 F. Supp. 2d 1338, 1346 (N.D. Ga. 2011) (same); *Dubose v. Merchs. & Farmers Bank*, 2006 U.S. Dist. LEXIS 12601, *5 (S.D. Miss. 2006) (finding no proof that Congress intended for DIDA to be the exclusive remedy for state law usury claims).

In contrast, the Third and Fourth Circuits have held that the FDIA completely preempts state law usury claims against state banks.  *See Vaden,* 489 F.3d at 606; *In re Community Bank*, 418 F.3d at 295.  In both cases, however, the courts relied upon the conclusion that FDIA's interest rate exportation language is interpreted *in pari materia* with the equivalent language in the NBA.  *Vaden*, 489 F.3d at 295; *In re Community Bank*, 418 F.3d at 295 (language is "verbatim").

In *Thomas*, the Eighth Circuit identified a flaw in this *in pari materia* analysis.  The textual differences between the two statutes are key for purposes of a complete preemption analysis – yet were not acknowledged by the Third and Fourth Circuits.  *Thomas*, 575 F.3d at 794.  Accordingly, the absence of a national bank loan means complete preemption does not apply.

## VII.   *Younger* Abstention Warrants Remand

The Administrator alleges in her Amended Complaint that Marlette, and not Cross River Bank, is the true lender of the Best Egg loans.  (AC at ¶¶ 30-33.)  If the Administrator succeeds with this claim, federal preemption cannot apply because a bank has not made the subject loans.  *E.g. West Virginia*, 605 F.Supp.2d at 787 ("[i]f [non-bank loan purchaser of bank loans] is found to be a de facto lender, then [it] may be liable under West Virginia usury laws").  The Court should remand the Administrator's claims for the additional reason that, per *Younger* abstention, the Administrator's true lender claim should properly be resolved in the state courts.

Under *Younger* abstention, federal courts must abstain from exercising jurisdiction when three conditions are satisfied: "1. There is an ongoing state proceeding. 2. The state court provides an adequate forum for the claims raised in the federal complaint.  3. The state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999).

A court addressed *Younger* abstention regarding claims similar to the Administrator's in *Goleta Nat'l Bank*, 211 F. Supp. 2d 711.  The North Carolina Attorney General sued a payday lender (Ace Cash) for violations of state usury laws. *Goleta Nat'l Bank*, 211 F. Supp. at 712.  The subject loans purported to be originated by a bank, but the Attorney General alleged that Ace Cash was the true lender. *Id.* at 713, 717.  After Ace Cash unsuccessfully sought to remove the claims to federal court, Ace Cash Express and the bank sued the Attorney General in federal court, seeking to enjoin the remanded state court lawsuit. *Id.* at 714.

The court dismissed the claims based upon *Younger* abstention. *Id.* at 716. It held that Ace Cash Express could raise its preemption defense in the state court and that the state had "a vital interest in protecting its citizens from predatory lending, usury, and other forms of deceptive trade practices." *Id.*  The state court should properly resolve whether the bank was the true lender. *Id.* at 717-18.

19

The same grounds warrant the application of *Younger* abstention to the Administrator's claims against Marlette. The Administrator has filed a state court proceeding. Marlette asserts a preemption defense, which it may pursue in the state court. Like the Attorney General's claims in *Lingerfelt*, the Administrator's claims are brought pursuant to her authority to sue to protect the citizens of Colorado from usurious lending practices. (AC at ¶ 1.)

## VIII.  Conclusion

The Administrator asserts only state law claims against Marlette. Her claims thus do not arise under federal law and abstention would be appropriate even if they did. The Administrator respectfully requests the remand of this action.

DATED at Denver, Colorado this 27th day of March, 2017.

CYNTHIA H. COFFMAN
Attorney General

s/ *Nikolai N. Frant*
NIKOLAI N. FRANT
TRINA K. TAYLOR
Assistant Attorneys General
Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone:  720-508-6011
Email:  nikolai.frant@coag.gov
            trina.taylor@coag.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Geoffrey N. Blue
Scott E. Gessler
Klenda Gessler & Blue LLC
1624 Market Street, Suite 202
Denver, CO 80202
Email:  gblue@klendagesslerblue.com
        sgessler@klendagesslerblue.com

Mark E. Haddad
Collin P. Wedel
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Email:  mhaddad@sidley.com
        cwedel@sidley.com


s/ *Michele A. Kendall*
Paralegal